# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ENLIGHTENED READING, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 08-0209-CV-W-FJG |
| v. | ) |
| | ) |
| JACKSON COUNTY, MISSOURI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is defendant's Motion for Judgment on the Pleadings (Doc. No. 19).

**I.  BACKGROUND**

On or around January 22, 2008, the Jackson County legislature passed Ordinance No. 3969, which enacted chapter 43 of the Jackson County Code. The ordinance imposed certain restrictions and regulations applicable to sexually oriented businesses. In March 2008, plaintiffs filed the instant action challenging the ordinance as unconstitutional on various grounds. Subsequently, the Jackson County legislature repealed Ordinance No. 3969, and replaced it with Ordinance No. 3993, which enacted new regulations applicable to adult entertainment businesses. Plaintiffs filed an amended complaint (Doc. No. 14) challenging Ordinance No. 3993, and defendant then moved for judgment on the pleadings (Doc. No. 19).

The legislature's purpose in enacting Ordinance No. 3993 was to "promote the health, safety, and general welfare of the citizens of [Jackson] County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of adult

entertainment businesses within the County." Jackson County, Mo. Code ch. 43, § 4300(a) (2008). In finding that adult businesses produce numerous adverse secondary effects to the County, the legislature relied on evidence "presented in hearings and in reports made available" to it as well as interpretations and findings found in various judicial opinions. The County adopted and incorporated its findings and the sources it relied on, including judicial opinions and studies, into the ordinance.

Enlightened Reading, Inc., d/b/a Erotic City, its officers, and ELB, Properties, Inc., are suing Jackson County pursuant to 42 U.S.C. § 1983 for an injunction, a declaration that Ordinance No. 3993 is unconstitutional in violation of the First, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution as well as Article I, §§ 8 & 10 of Missouri Constitution, and monetary damages. Plaintiffs operate a retail store that sells various novelties, lingerie, etc.; a portion of its retail merchandise contains sexually explicit material. Plaintiffs allege that they were forced to close down its video arcade following the passage of Ordinance No. 3969, and claims that it suffered financial loss as a result.

## II. LEGAL STANDARD

> When considering a motion for a judgment on the pleadings, the Court accepts as true all facts pleaded by the nonmoving party and grants all reasonable inferences from the pleadings in favor of the nonmovant. . . . Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.

Osby v. Citigroup, Inc., No. 07-CV-06085-NKL, 2008 WL 2074102, *1 (W.D.Mo. May 14, 2008) (internal citations and quotations omitted).

## III. DISCUSSION

### A. First Amendment Challenge: U.S. v. O'Brien Test

In their complaint, plaintiffs challenge Ordinance 3993 as violative of the First

Amendment of the U.S. Constitution because it is not narrowly tailored to promote a substantial government interest.

Generally, the Supreme Court has addressed First Amendment challenges to two types of ordinances that attempt to alleviate the secondary effects of adult businesses: (1) zoning ordinances which regulate the time, place, and manner of operating adult businesses and (2) public indecency statutes prohibiting certain forms of expressive conduct. See SOB, Inc. v. County of Benton, 317 F.3d 856, 859 (8th Cir. 2003). The Supreme Court has applied the analytical framework found in United States v. O'Brien, 391 U.S. 367 (1968) to address the latter type of ordinances while applying City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), and its progeny, for the former. Id. at 859-860. The Jackson County ordinance does not fit neatly into either category; however, in its motion for judgment on the pleadings, defendant analyzed the ordinance under O'Brien and plaintiffs do not dispute this point. Thus, the Court will analyze the ordinance under the O'Brien analysis.[1]

In order to be constitutional under O'Brien, the ordinance must meet the following requirements: (1) it must be within the constitutional power of government, (2) further an important or substantial government interest, (3) be unrelated to the suppression of free expression, and (4) the incidental restriction on free speech rights must be no greater than necessary to further the interest of the government. 391 U.S. at 377. With regards to the first requirement, the County has the constitutional power to pass the ordinance in question

---

[1] The Seventh Circuit faced with a similar situation applied the Renton analysis because both parties proceeded under that analysis. Andy's Restaurant & Lounge, Inc. v. City of Gary, 466 F.3d 550, 553 (7th Cir. 2006). The court also noted that the results could very well end up the same under either framework.

3

Case 4:08-cv-00209-FJG   Document 27   Filed 03/24/09   Page 3 of 17

pursuant to its police powers under Art. VI, § 18(c) of the Missouri Constitution, and plaintiffs do not dispute this point. Rather, plaintiffs primarily challenge the adequacy of the evidence the County relied on to justify the ordinance.

Defendant argues that the ordinance in question furthers the substantial government interest of reducing harmful secondary effects associated with adult entertainment businesses, and does not aim to suppress free expression or speech. The secondary effects that the ordinance seeks to ameliorate include, "personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, obscenity, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation." Jackson County, Mo. Code, ch. 43, § 4300(b)(1). In section 4300(b), the ordinance lists a number of cases and studies which the County legislature relied upon in supporting its finding of secondary effects related to adult entertainment businesses. The Court finds that the prevention of the secondary effects listed in the ordinance are undeniably important government interests. See City of Erie v. Pap's A.M., 529 U.S. 277, 296 (2000) (plurality opinion); Jake's, Ltd., Inc. v. City of Coates, 284 F.3d 884, 888 (8th Cir. 2002) (noting that a city's interest in maintaining the "quality of urban life . . . justifies zoning restrictions intended to minimize such effects").

However, plaintiffs argue that the evidence relied upon does not support the finding that establishments, such as the one operated by plaintiffs, produce the deleterious secondary effects cited in the studies and judicial opinions on which the County relied. In Renton, the Court stated that a city does not need to conduct or rely on studies or evidence pertaining to its particular locale. 475 U.S. at 51. Instead, the Court noted that the First Amendment only requires a city to rely upon evidence that is "reasonably believed to be

4

relevant to the problem that the city addresses." Id. at 51-52. The County bears the initial burden to produce "evidence that supports a link between concentrations of adult operations and asserted secondary effects[;]" however, it need not produce evidence that rules out every possible competing theory. City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 437 (2002) (plurality opinion). In her plurality opinion, Justice O'Connor formulated the evidentiary inquiry a district court should undertake in the following manner:

> This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in Renton. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

Id. at 438-439.

In the present case, plaintiffs do not offer evidence disputing defendant's factual findings, but rather they argue that the evidence that the County relied upon does not support its rationale. Specifically, plaintiffs claim that the ordinance as applied to an adult retail book store that only sells and rents adult material for off-site use is unconstitutional because the evidence the County relied upon to justify the ordinance did not specifically consider these types of establishments.

To support this argument, plaintiffs rely on Encore Videos, Inc. v. City of San Antonio and DiMa Corp. v. High Forest Township. In Encore Videos, the Fifth Circuit addressed the constitutionality of an ordinance prohibiting sexually oriented businesses from being located within 1000 feet of certain areas, such as churches and schools. 330 F.3d 288, 294 (5th Cir. 2003). The court noted that the term "sexually oriented businesses" was

5

broadly defined and encompassed establishments that sold adult material for off-site use as well as those businesses selling materials for on-site use, such as bookstores that also offer a video arcade booth for on-site viewing. The court held that the three studies that the city relied on to justify its regulation did not support such extensive regulations or broad definitions. In particular, the studies were inadequate because they either did not examine the effects of off-site adult bookstores or did not differentiate between the effects of on-site versus off-site bookstores. The court asserted that a meaningful distinction existed between an on-site and off-site establishment since customers of off-site stores do not linger in the area long enough to engage in harmful activities. Similarly, in DiMa Corp. v. High Forest Township, a district court held that a genuine issue of material fact existed as to whether the evidence the city relied on was applicable to plaintiffs' "off-site" adult establishment. 2003 WL 21909571, at *4, No. 02-3800 (DWF/SRN) (Aug. 7, 2003). In so finding, the court noted that the city relied on studies that were conducted on metropolitan, as opposed to rural areas, and which did not specifically examine secondary effects of "off-site" adult stores. Id.

The Encore Videos court noted that the Eighth Circuit had rejected the distinction between studies addressing the secondary effects between on-site and off-site adult establishment. 330 F.3d at 295. In ILQ Investments v. City of Rochester, the Eighth Circuit expressly stated that under the Renton test, the city did not need to show that an adult bookstore that offered its materials for off-site use produces the exact same adverse effects as the adult businesses in the studies. 25 F.3d 1413, 1418 (8th Cir. 1994). As long as the ordinance affects businesses "reasonably believed to produce at least some of the unwanted secondary effects, [the city] must be allowed a reasonable opportunity to

6

experiment with solutions to admittedly serious problems." Id. (quoting Young v. American Mini Theatres, Inc., 427 U.S. 50, 71 (1976) (plurality opinion)) (internal quotations omitted). Significantly, the court concluded that the plaintiff could not escape a "time, place, and manner regulation that has been justified by studies of the secondary effects of *reasonably similar businesses.*" Id. (emphasis added). While the Encore Videos court was free to adopt its own interpretation regarding this distinction, this Court must follow the binding authority in this circuit. See Doctor John's, Inc. v. City of Sioux City, 438 F. Supp. 2d 1005, 1046-47 (N.D. Iowa 2006) (adhering to the holding in ILQ Invesments regarding the distinction between on-site and off-site adult business while noting its disagreement with the court's general premise).

The studies the County relied on involved reasonably similar businesses to plaintiffs' establishment, and the evidence was reasonably relevant to the secondary effects it sought to address. Additionally, the County reviewed evidence of deleterious secondary effects pertinent to adult retail businesses as well. For instance, it relied on case law summarizing evidence regarding adult retail businesses' secondary effects in upholding regulations. See, eg., World Wide Video of Washington, Inc. v. City of Spokane, 368 F.3d 1186, 1190 n. 6 (9th Cir. 2004) (city relied on declarations from citizens who had "witnessed various criminal acts in and around World Wide's stores, including prostitution, drug transactions, public lewdness, harassment of citizens by World Wide's clientele[."]); People ex rel. Deters v. Effingham Retail #27, Inc., Case No. 04-CH-26, Modified Permanent Injunction Order (Ill. Fourth Judicial Circuit, Effingham County, July 13, 2005) (noting that retail-only adult bookstore involved in the litigation had produced adverse secondary effects such as acts of sexual solicitation at the store). Based on ILQ Investments, plaintiffs' contention that the

7

County did not rely on studies focusing on secondary effects from retail-only bookstores is immaterial because the County relied on studies and judicial opinions focusing on reasonably similar businesses. Therefore, because plaintiffs have failed to cast doubt on the County's rationale or on the evidence the County relied upon, the County met its evidentiary burden to justify its substantial government interest.

As for the third and fourth factor in the O'Brien test, the Court finds that the ordinance is unrelated to the suppression of speech and narrowly tailored to promoting its interest. For the most part, the ordinance does not seek to suppress speech or expression, directly or indirectly. Instead, the ordinance imposes certain requirements on operators and employees of adult entertainment businesses to curb the associated secondary effects. In section 4300(a), the County makes clear that it does not intend to suppress speech or expression, but rather seeks to combat harmful effects from such businesses. In combating such effects, the County has narrowly tailored its ordinance to allow for the dissemination and access to sexually oriented material in the County. The ordinance does not cap the number of adult businesses that can operate in the County or restrict the dissemination of adult entertainment material. Furthermore, as defendant notes in its suggestions in support of its motion (Doc. No. 20), the Eighth Circuit and other courts have consistently help up restrictions on nudity, buffer-zones, no-touch rules, open-booth regulations, and hours restrictions.

Accordingly, the ordinance withstands plaintiffs' First Amendment challenge as a matter of law.

**B.    VAGUENESS AND OVERBREADTH CHALLENGES**

Plaintiffs challenge various definitions found in § 4301 as unconstitutionally vague

8

and overbroad. Plaintiffs allege the following terms and their definitions are impermissibly vague and overbroad: "Adult Bookstore or Adult Video Store," "Adult Entertainment Business," "Explicit Novelty," "Explicit Novelty Store," "Employee," "Specified Anatomical Areas," "Specified Criminal Activity," "Specified Sexual Activities," and "Viewing Room." Plaintiffs also allege that §4302, which imposes licensing regulations on adult entertainment business, and §§ 4312, 4313, and 4316, which prohibit certain conduct and impose other requirements, are unconstitutionally vague and overbroad.

An ordinance may be impermissibly overbroad if it "reaches a substantial number of impermissible applications relative to the law's legitimate sweep." New York v. Ferber, 458 U.S. 747, 771 (1982) (internal quotations omitted). "A finding of overbreadth is strong medicine to be used sparingly and only as a last resort." Farkas v. Miller, 151 F.3d 900, 905 (8th Cir. 1998) (internal quotations and citations omitted). Even if the statute is overbroad, the statute may still be upheld if is "readily susceptible" to a narrowing construction. Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 397 (1988).

Here, the Court finds that plaintiffs' overbreadth challenges have no merit. The ordinance specifically applies to businesses whose principal business activities include selling adult products or providing adult entertainment. Further, there is no indication that any potential overbreadth in the statute is not readily susceptible to a narrowing construction. The ordinance itself provides definitions that limit any potential overbreadth issues. For instance, the ordinance clearly states that businesses will not be classified as an adult entertainment business solely by virtue of selling or renting materials that are rated R or NC-17 by the Motion Picture Association of America. It specifically excludes from its definition of explicit novelty store "any pharmacy, drug store, medical clinic, or any

9

establishment primarily dedicated to providing medical or healthcare products or services." Similar limitations are found throughout the ordinance, which preclude plaintiffs' overbreadth challenge.

Similarly, plaintiffs' constitutional challenges based on vagueness grounds fail. A statute will be upheld in the face of a vagueness challenge "unless persons of common intelligence must necessarily guess at is meaning." Scope Pictures, of Missouri, Inc. v. City of Kansas City, 140 F.3d 1201, 1205 (8th Cir. 1998) (internal quotations omitted). Here, people of common intelligence do not have to necessarily guess at the meaning of the sections of the ordinance that plaintiffs challenge. The ordinance provides "meaningful legislative standards" for the challenged sections, see ILQ Investments, 25 F.3d at 1419, as the regulations are very specific and can be objectively measured.

**C.     Licensing Regulations**

   **1.     Decision Maker's Discretion**

In their complaint, plaintiffs challenge the regulations regarding the issuance, denial, revocation, and suspension of an adult entertainment license as facially unconstitutional in several respects. Plaintiffs argue that the ordinance bestows "unbridled discretion" in the Director of the Jackson County Public Works Department when determining which entities may operate as a licensed adult entertainment business. Also, plaintiffs allege that the regulations fail to include procedural safeguards mandated by the Supreme Court. Plaintiffs argue that the licensing regulations create an impermissible prior restraint on speech rights. "Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context where the licensing scheme vests unbridled

10

discretion in the decision maker and where the regulation is challenged as overbroad." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223 (1990).

Plaintiffs' challenges to the licensing requirements based on the discretion the ordinance gives the Director of the Public Works Department fail as a matter of law. In City of Littleton v. Z.J. Gifts D-4, L.L.C., the Supreme Court held that the City of Littleton's licensing scheme imposed "reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display." 541 U.S. 774, 783 (2004). Although municipalities are permitted to impose licensing procedures for certain types of expression, "the Constitution requires that the city establish neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered." City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 760 (1988).

In this case, the ordinance provides that the director "shall issue a license unless" one of the following factors is present: (1) applicant is under 18; (2) applicant provided false information during application process; (3) failing to pay license fee; (4) the business does not comply with the regulations in Chapter 43 or other zoning ordinances; (5) an adult business, for which the applicant had an influential interest in, was padlocked or declared a nuisance by a court within the past 5 years; and (6) the applicant was convicted of a "specified criminal activity." Ch. 43, § 4303(a). The director does not have "unbridled discretion" in determining to whom he will issue a license; rather, the director must issue a license unless various objective and neutral criteria are not met. Similarly, the provisions relating to the revocation and suspension of a license do not vest unconstitutional discretion in the director. Suspension or revocation of a license may occur if the licensee knowingly violates the ordinance, which sets forth objective and measurable criteria in determining

11

whether such a violation has occurred.

## 2. Procedural Safeguards

Plaintiffs also challenge the ordinance for failing to provide procedural safeguards required under FW/PBS, Inc. v. City of Dallas thus rendering the ordinance unconstitutional on its face.[2] In FW/PBS, the Supreme Court noted that "where a scheme creates a risk of delay, such that every application of the statute create[s] an impermissible risk of suppression of ideas," facial challenges are permissible. 493 U.S. at 223-224 (internal citations and quotations omitted). With regards to licensing of adult businesses, "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." Id. at 228. The Court subsequently clarified that the latter safeguard requires a prompt judicial decision, rather than merely prompt access to a court. Littleton, 541 U.S. at 781.

Here, the ordinance specifically proscribes the time limit for the Director of Public Works to issue a determination regarding the application of a license. See Ch. 43, § 4303 (granting a temporary license to applicants for preexisting lawful adult establishments if application is acceptable on its face; providing 20 days for Director to issue or deny a license to applicant). Furthermore, if an application is denied, the applicant may request a hearing within 10 days after delivery of the notice, and the Director must schedule a

---

[2]Plaintiffs also allege that the licensing regulation denying licenses to applicants that have committed "specified criminal activity" creates an impermissible prior restraint because its not related to the governmental interest. However, plaintiffs do not allege that this regulation will prevent them from acquiring a license, and as a result, plaintiffs lack standing to bring this challenge. See Jakes, Ltd. v. City of Coates, 284 F.3d 884, 890 (8th Cir. 2002).

hearing within 10 to 20 days from when the notice for a hearing is issued. Ch. 43, § 4309(a). At the hearing, the Director bears the burden to prove the grounds for denying, suspending, or revoking a license. The hearing will generally not last longer than 2 days, and a decision, along with the grounds for such a decision, will be made within 5 days of the completion of the hearing. If a court action challenging the County's licensing decision is filed, the ordinance provides that the County will consent and adhere to an expedited schedule for the disposition of the case. Further, § 4309(b) requires the County to issue a provisional license to adult entertainment business that were lawfully operating as of the date the application is filed if the business files a court action challenging the County's denial, suspension, or revocation of a license.

The Court finds that the ordinance is not an unconstitutional prior restraint and conforms to the procedural requirements found in FW/PBS because it provides specific, reasonable time limits for the Director to make decisions regarding licensing as well as for addressing challenges to those decisions. Additionally, the ordinance expressly states that it will facilitate and comply with an expedited schedule regarding court actions that challenge a licensing decision, which fulfills the requirement that the ordinance provide a prompt judicial decision. For previously existing lawful adult businesses that are challenging a licensing decision, the County issues the business a provisional license throughout the course of the litigation and thus preserves the status quo. Furthermore, contrary to plaintiffs' allegations, the ordinance states that if the County fails to meet or act within a specified deadline, "the license shall be deemed granted and the business or employee allowed to commence operations or employment the day after the deadline for the County's action has passed." Ch. 43, § 4318.

13

**D.     REGULATIONS IMPOSING STRUCTURAL REQUIREMENTS AND PROHIBITING CERTAIN ACTIVITIES[3]**

Plaintiffs challenge §§ 4312, 4313, and 4316 on various grounds that they previously raised against other sections of the ordinance. The Court's ruling above concerning challenges based on vagueness, overbreadth, unconstitutional discretion, and lack of procedural safeguards apply with equal force to plaintiffs' attacks on these sections. Plaintiffs do bring up a few different theories to challenge these sections which are discussed below. Sections 4312, 4313, and 4316 respectively regulate the exhibition of sexually explicit films on the premises, impose certain structural and lighting requirements, and outline prohibited conduct for patrons and employees.

**1.     Right of Privacy and Freedom of Association Challenges**

In its complaint, plaintiffs argues that the above referenced sections are "violative of [p]laintiffs' and [p]laintiffs' customers', rights of privacy and association . . . and were enacted to unlawfully censor adult-oriented speech material[.]" To the extent that plaintiffs have standing to raise claims on behalf of their customers, the Court finds that such challenges asserted on behalf of their customers and themselves would fail. See Doe v. City of Minneapolis, 898 F.2d 612, 615 n. 11 (8th Cir. 1990) (noting that "the right to view public entertainment in the seclusion of a closed booth simply falls outside the ambit of the personal intimacies of the home, the family, marriage, parenthood, procreation, and child rearing"); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 300 (6th Cir. 2008)

---

[3]Plaintiffs also challenge these regulations as not being narrowly tailored to serve a substantial government interest as required by the First Amendment. The Court determined above that the ordinance in its entirety is narrowly tailored and thus will not reexamine the point here.

14

(holding that "a mandatory buffer between performer and audience and a no-touching rule do not violate the right to free association"). Similarly, the fact that the legislature designed or calculated to eliminate plaintiffs' ability to transact business or to censor certain activities is immaterial. See Renton, 475 U.S. at 48 (rejecting claim that ordinance was invalid when the legislature's motivating factor in enacting the ordinance was to restrict plaintiff's exercise of First Amendment rights). Further, the ordinance does not directly or indirectly censor sexually oriented material or entertainment, and while plaintiffs' ability to transact business may be hindered, the ordinance imposes reasonable requirements to conduct business.

### 2. Challenge Based on Young v. American Mini-Theatres

Plaintiffs also allege that these sections "are not narrowly tailored to advance any substantial governmental interest, and are violative of the mandate issued . . . in Young v. Am. Mini-Theatres, 427 U.S. 50 (1976)[.]" Am. Compl. at ¶ 33(d). The Young Court upheld a zoning restrictions on adult book stores, but noted that a different outcome may have resulted "if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." 427 U.S. at 72 n. 35. As discussed above when addressing plaintiffs' First Amendment challenge, the amount or access to sexually explicit material and entertainment will not be substantially restricted because there is no indication that the ordinance will have the effect of restricting a great number of applicants from obtaining a license to operate adult establishments.

### E. Equal Protection

Plaintiffs next challenge these sections as violative of the Equal Protection Clause

15

in the Fourteenth Amendment. Specifically, plaintiffs argue that these sections create a classification that is "arbitrary, irrational, and designed to suppress a certain type of speech based upon content." Am. Compl. at ¶ 33(g). The classification plaintiffs challenge is between those who must comply with the requirements imposed in the ordinance and those who do not. Of course, those entities that must comply with the ordinance are adult entertainment businesses as well as its operators and employees. The Court finds that plaintiffs' equal protection challenges fail. Although the ordinance does classify adult entertainment businesses, the classification does nothing more than impose certain requirements on adult entertainment establishments, which does not restrict the message being conveyed, and as such, it does not violate the Equal Protection Clause. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 71-72 (1976) (noting that the "city's interest in the present and future character of its neighborhoods adequately supports its classification" of adult movie theaters). As described above, the classification is not irrational or related to suppressing speech, but rather is a reasonable means of combating secondary effects associated with adult entertainment businesses. See Renton, 475 U.S. at 55 n. 4 (finding that "respondents fare[d] no better under the Equal Protection Clause than under the First Amendment itself").

F.     **State Constitutional Challenges**

Plaintiffs allege that the ordinance violates Article I, Sections 8 and 10 of the Missouri Constitution. Section 8 guarantees its citizens freedom of speech, while section 10 guarantees citizens due process of the law. Because all of the federal claims which formed the basis of the court's subject matter jurisdiction have been dismissed, the Court shall dismiss the remaining state law claims. See Palmer v. Arkansas Council on

16

Economic Educ., 154 F.3d 892, 897 (8th Cir. 1998) (affirming dismissal of state law claims after district court dismissed federal claims on their merits).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's Motion for Judgment on the Pleadings (Doc. No. 19). Thus, final judgment should be entered in favor of defendant and against plaintiffs.

**IT IS SO ORDERED.**

Date: 03/24/09　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge